UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EPLET, LLC and RACER
PROPERTIES LLC,

    Plaintiffs,

v.

DTE PONTIAC NORTH, LLC
and DTE ENERGY SERVICES,
INC.,

    Defendants.

              /

Case No. 2:17-cv-11462

HON. STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING PLAINTIFFS' MOTION
FOR RECONSIDERATION [29], DENYING
PLAINTIFFS' MOTION FOR CERTIFICATE
OF APPEALABILITY [32], AND DENYING IN PART GRANTING IN PART
PLAINTIFFS' MOTION TO AMEND COMPLAINT [34]**

On May 6, 2017, Plaintiffs Eplet, LLC ("Eplet") and RACER Properties LLC ("RACER") filed their complaint. ECF 1. On July 28, 2017, Defendants DTE Pontiac North, LLC ("DTEPN") and DTE Energy Services, Inc. ("DTE Energy") filed a motion to dismiss the complaint. ECF 11. On March 23, 2018, the Court granted in part and denied in part Defendants' motion to dismiss. ECF 27. After stipulating to an extension, ECF 28, on April 13, 2018, Plaintiffs filed a motion for reconsideration, ECF 29. On April 20, 2018, Plaintiffs also filed a motion for a certificate of appealability. ECF 32. On May 4, 2018, Plaintiffs filed a motion to amend or correct the complaint. ECF 34. The Court has reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons below, the Court will deny

1

the motion for reconsideration, deny a certificate of appealability, and deny in part the motion to amend the complaint.

## BACKGROUND

The litigation arises from General Motors' ("GM") bankruptcy filing and how it affected agreements between GM and DTEPN regarding a GM facility in Pontiac, Michigan. In January 2007, GM and DTEPN entered into four agreements concerning the facility: an asset purchase agreement, a lease agreement, a utility services agreement, and an environmental indemnity agreement.[1] *See* ECF 27, PgID 553. DTE Energy, which was DTEPN's parent company, executed a parental guaranty guaranteeing all of DTEPN's obligations under the utility services agreement. *Id.* GM filed for bankruptcy two and a half years later. *Id.* GM and DTEPN entered into a stipulation in bankruptcy court that established that the utility services agreement, the asset purchase agreement, and the lease agreement constituted a single, integrated contract and that GM was rejecting the contract. *Id.* at 553–54. For the next six years, DTEPN remained in exclusive possession of the premises, but the buildings fell into disrepair and environmental hazards emerged. *Id.* at 554. When the lease expired in January 2017, DTEPN handed the keys to the facility to RACER, a successor-in-interest to GM concerned with environmental issues. *Id.* at 552, 554.

Plaintiffs' complaint alleged eight counts: (I) breach of associated agreements, (II) breach of guaranty, (III) quantum meruit, (IV) nuisance, (V) negligence, (VI)

---

[1] The Court recites the facts as pleaded, as it did in reviewing Defendants' motion to dismiss. The summary does not constitute a finding of fact by the Court.

2

statutory waste, Mich. Comp. Laws § 600.2919, (VII) a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") claim, 42 U.S.C. § 9601, *et seq.*, and (VIII) violation of the Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws § 324.3101, *et seq.* ECF 1. In Defendants' motion to dismiss, DTEPN moved only for dismissal of the breach of associated agreements claim, while DTE Energy moved to dismiss all claims against it. ECF 11, PgID 98.

The Court granted Defendants' motion to dismiss the breach of associated agreements claim. ECF 27, PgID 562. In making the claim, Plaintiffs argued that DTEPN's continued possession of the facility meant that the utility services agreement remained in effect. But the Court held that GM's breach of the three integrated agreements was substantial, permitting DTEPN to terminate the integrated contract. *Id.* at 560. And DTEPN filed a proof of claim and subsequently did not perform under the utility services agreement. *Id.* at 560–61. Furthermore, Plaintiffs never renegotiated the lease agreement upon termination of the utility services agreement. *Id.* at 562. The breach of associated agreements claim therefore failed to state a claim upon which relief could be granted.

The Court also granted in part DTE Energy's motion to dismiss the breach of guaranty agreement claim, dismissing with prejudice any claims arising under the parental guaranty agreement after April 12, 2011. *Id.* at 565. Specifically, there were

no longer any obligations due after April 12, 2011,[2] so DTE Energy had no obligations under the parental guaranty agreement after that date. *Id.*

The Court also dismissed the quantum meruit and negligence claims against DTE Energy because they alleged liability only through veil piercing. *Id.* at 566. Plaintiffs could therefore pursue only those claims against DTEPN, which had exclusive possession and control over the leased premises. *Id.*

But the Court held that Plaintiffs could proceed against DTE Energy on the negligence, statutory waste, CERCLA, and NREPA claims for claims arising before April 12, 2011. *Id.* And Plaintiffs could pursue all those claims against DTEPN as pleaded. *Id.*

In their motion to alter or amend judgment under Federal Rule 59(e)—titled a motion for reconsideration[3]—Plaintiffs argue that the Court was mistaken in concluding that the utility services agreement and lease were severable and terminated on April 12, 2011. ECF 29, PgID 576-77. They argue that: (1) DTEPN's proof of claim did not terminate the utility services agreement because it was not served on RACER and because it could not bind a non-debtor third party, *id.* at 577; (2) the lease did not terminate under § 7.2 of the lease agreement because § 7.2 requires DTEPN to elect to continue under the utility services agreement, *id.* at 578; (3) the associated agreements were not severable, *id.*; (4) DTEPN would have been a

---

[2] The proof of claim was actually filed on March 31, 2011, and not April 12, 2011. *See* ECF 1-4, PgID 58, ECF 1-5, PgID 63. Defendants have asked the Court to amend the March 23, 2018 order to reflect March 31, 2011 as the correct filing date. ECF 33, PgID 726.

[3] Plaintiffs also cite Local Rule 7.1(h), which governs motions for reconsideration.

4

holdover tenant in the leased property, requiring it to comply with all contractual provisions, *id.*; (5) the Court should not have concluded on a motion to dismiss that there was a material breach of the associated agreements, *id.*; and (6) their complaint adequately pleaded a claim for piercing the corporate veil against DTE Energy, *id.*

In the motion for certification of interlocutory appealability, Plaintiffs argue that the Court should certify several issues addressed in the March 23, 2018 order. They maintain that the following issues are controlling issues of law subject to substantial grounds for difference of opinion: (1) whether filing a proof of claim in a bankruptcy case "can act as a termination of a contract," (2) whether "Bankruptcy Code § 365(h)(1)(A) prohibits a party to several agreements forming a single integrated contract, which include a lease, from terminating its obligations under only some of the agreements where it has elected to remain in possession of the leased premises for the duration of the lease[,]" and (3) "whether allegations that a parent corporation intentionally caused a subsidiary to take actions to breach a contract are sufficient to pierce the corporate veil[.]" ECF 32, PgID 691–92.

In the motion for leave to amend their complaint, Plaintiffs request that the Court allow them to amend their complaint in three ways: (1) to add allegations of fact and "admissions by Defendants" that the associated agreements were never terminated; (2) to add allegations to support their veil-piercing theory against DTE Energy; and (3) to add a count for breach of implied-in-law contract. ECF 34, PgID 1064. But Plaintiffs' blacklined proposed amended complaint reflects edits that extend beyond the three categories of changes. *See* ECF 34-2. For example, the

5

proposed amended complaint endeavors to add that RACER is a successor to GM "for expressly limited purposes[,]" *id.* at 1084, and that "RACER has no responsibilities to GM or its creditors," *id.* at 1087. The Court will address Plaintiff's express requests in their motion to amend separately from its proposed amended complaint.

## STANDARD OF REVIEW

I. <u>Motion to Alter or Amend a Judgment</u>

"A federal court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

"To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 617 (6th Cir. 2010) (quoting *GenCorp,* 178 F.3d at 834). Evidence was previously available—and is thus insufficient to warrant an amended judgment—if it "could have been previously submitted in the exercise of reasonable diligence[.]" *Hurst v. Fed. Nat'l Mortg. Ass'n*, No. 14-CV-10942, 2015 WL 1757225, at *1 (E.D. Mich. Apr. 17, 2015) (quoting *Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus., Inc.*, 86 F. Supp. 2d 721, 726 (E.D. Mich. 2000)).

The Court generally "will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). The movant must demonstrate a "palpable

6

defect" by which the Court has been misled and that correcting the defect would "result in a different disposition of the case." *Id.*

A palpable defect is a defect that is "obvious, clear, unmistakable, manifest, or plain." *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001). A party cannot introduce "evidence for the first time in a motion for reconsideration [when] that evidence could have been presented earlier." *Shah v. NXP Semiconductors USA, Inc.*, 507 Fed. App'x 483, 495 (6th Cir. 2012); *Bank of Ann Arbor v. Everest Nat'l Ins. Co*, 563 Fed. App'x 473, 476 (6th Cir. 2014).

II. <u>Certificate of Interlocutory Appealability</u>

> When a district judge, in making in a civil action an order not otherwise appealable under [§ 1292], shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Review under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citation omitted).

An issue is a controlling question of law if resolution of the issue on appeal could "materially affect the outcome of litigation in the district court." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992). A

> substantial ground for difference of opinion exists when: (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the

> controlling circuit; or (4) the circuits are split on the question.

*City of Dearborn v. Comcast of Mich. III, Inc.*, No. 08–10156, 2008 WL 5084203, at *3 (E.D. Mich. Nov. 24, 2008). The Court's resolution of an issue would materially advance the ultimate termination of the litigation if the court's decision on the issue would substantially affect the manner in which litigation is conducted. *In re City of Memphis*, 293 F.3d at 351 (citation omitted).

III. <u>Motion for Leave to Amend a Complaint</u>

A party not amending as a matter of course may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave when justice so requires." *Id*. The Court should therefore freely give leave

> in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

**DISCUSSION**

I. <u>Plaintiffs' Motion to Alter or Amend Judgment or Motion for Reconsideration</u>

Plaintiffs rely on allegedly previously unavailable new evidence to support their first argument that DTEPN's proof of claim did not terminate the utility services agreement. Specifically, Plaintiffs point to provisions of the bankruptcy court's Confirmation Order's notice provision, ECF 29, PgID 596–97, and two declarations, ECF 29-2 (declaration of Elliott Laws, sole member of Eplet), 29-3 (declaration of

Michael Blumenthal, Plaintiffs' counsel, with email attachments dating from 2013 through 2016). Plaintiffs argue that the new evidence shows that RACER was not served with the proof of claim and the proof of claim could not bind RACER.

The Court will not consider the newly-introduced evidence. Under Rule 59's standard for a motion to alter or amend judgment, it does not appear that the evidence upon which Plaintiffs rely could not have previously been submitted in the exercise of reasonable diligence. *See Hurst*, 2015 WL 1757225, at *1. All the new evidence would have been previously available upon exercise of reasonable diligence. The bankruptcy court proceedings initiated in 2011, *see* ECF 29, PgID 573–74, and the emails date from 2013 through 2016, *see* ECF 29-3. And Plaintiffs do not show that there was a palpable defect in the Court's conclusion that the utility services agreement did not remain in force after 2011. *See* E.D. Mich. LR 7.1(h)(3). The Court bases its conclusion on the parties' conduct reflected in the record. Because Plaintiffs fail to show palpable defect, a clear error of law or present newly discovered evidence to the contrary, they are not entitled to relief on the Court's determination that the lease agreement was terminated 180 days after the utility services agreement was terminated in 2011. The lease agreement terminated pursuant to § 7.2.

Second, because the utility services agreement was terminated in 2011, there was no clear error of law or palpable defect that the parental guaranty agreement applied only to obligations accruing before the date of the utility services agreement's termination. After the utility services agreement's termination, DTE Energy could

not accrue further obligations under the parental guaranty agreement, which applied only to obligations arising under the utility services agreement.

Third, the agreements were severable by their own terms. *See* ECF 27, PgID 562. Plaintiffs' argument based on Michigan law's severance analysis is inapposite.

Fourth, § 7.2 of the lease agreement did not mean that DTEPN's course of conduct—after the utility services agreement terminated—reinstated the terminated contract. Indeed, Plaintiff's position that DTEPN was a holdover tenant required to comply with all contractual provisions is inconsistent with the terms of the lease agreement itself.

Fifth, Plaintiffs do not prevail on their argument that the Court improperly determined at the motion to dismiss phase that GM committed a material breach of the integrated agreements. Whether a breach is material is generally a question of fact. *E.g.*, *Hodak v. Madison Capital Mgmt., LLC*, 348 F. App'x 83, 90 (6th Cir. 2009) (citation omitted). Here, however, the Court concluded that there was no question of fact after reviewing the complaint's allegations and the terms of the agreements. Simply put, GM rejected the integrated agreements, indicating its intent not to purchase more utility services, and DTEPN could no longer perform under the utility services agreement.

Sixth, Plaintiffs do not convincingly argue that there was a clear error of law or that the Court committed palpable defect in ruling that their complaint did not adequately plead a veil piercing theory. The Court addressed the adequacy of the complaint's veil piercing theory in its March 23, 2018 order. Plaintiffs merely rehash

10

arguments already addressed by the Court. The Court will therefore deny Plaintiffs' motion for reconsideration.

II. <u>Application for Interlocutory Appeal</u>

None of the three issues that Plaintiffs present in their motion for certification are appropriate for interlocutory appeal because they do not present any controlling question of law on which a substantial ground for difference of opinion exists. *See* 28 U.S.C. § 1292(b). Plaintiffs are merely repackaging their disagreement with the Court's conclusions that the contract was terminated, that DTEPN's holdover did not mean that the remainder of the agreements survived, and that the complaint failed to sufficiently allege a veil-piercing theory against DTE Energy to seek review in another venue.

The issues that Plaintiffs identify are not controlling questions of law. The Court's conclusions involved contract interpretation and the application of law to facts, rather than any pure question of law. Even if they were pure questions of law, interlocutory appeal would still be inappropriate. The Court founded its conclusions about the contracts at issue—that the contract was terminated because of nonperformance and that one party's holdover did not necessarily demand that the other agreements survived—upon well-settled principles of contract law and interpretation. And the Court based its conclusion that the complaint failed to sufficiently allege a veil-piercing theory on well-established law regarding pleading requirements. Despite Plaintiffs' attempt to reframe the issues, no substantial ground for difference of opinion exists here. *See City of Dearborn*, 2008 WL 5084203,

11

at *3 (describing the circumstances where substantial ground for difference of opinion may exist). Interlocutory appeal would be inappropriate.

III. Motion for Leave to File Amended Complaint

Plaintiffs identify three ways they wish to amend their complaint, and they attach a proposed amended complaint that includes additional changes. Because Plaintiffs did not brief the additional changes, the Court will not allow the Plaintiffs to amend their complaint as proposed in their exhibits.

As to the three briefed proposed changes—to add allegations of fact and "admissions by Defendants" that the agreements were never terminated, to add allegations to support the veil-piercing theory against DTE Energy, and to add a count for breach of implied-in-law contract—the Court will determine whether justice requires amendment. *See Foman*, 371 U.S. at 182.

"Ordinary delay, alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (citation omitted). But at some point, "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id.* (quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)). Parties seeking to amend a complaint after an adverse judgment must meet a heavier burden. *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017); *Leisure Caviar*, 616 F.3d at 616. "If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's

12

decision.'" *Leisure Caviar*, 616 F.3d at 616 (quoting *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983)).

Although Defendants pointed out deficiencies with Plaintiffs' claims in their motion to dismiss, Plaintiffs failed to seek leave to add the allegations, evidence, and claims until *after* the Court issued its order on the motion to dismiss. ECF 37, PgID 1533. Here, the Court's order did not result in a final judgment of the entire case. *Cf. McWhorter*, 290 F.3d at 799 (stating that the court's order resulted in final judgment). Some of Plaintiffs' claims survived the motion to dismiss. Ultimately, however, Plaintiffs faced a dispositive motion *which could have resulted in final judgment* but still did not seek to amend their complaint until *after* the Court issued its order. The Court is therefore wary of possible gamesmanship and undue delay. And critically, Plaintiffs seek to amend the complaint only in response to the Court's articulation of how the complaint was insufficient. Thus, much of the reasoning in cases when plaintiffs moved to amend their complaint after entry of final judgment applies here.

Plaintiffs did not indicate before the Court's order that they wished to seek leave to amend and they do not explain why they failed to amend their complaint prior to the entry of an order on a dispositive motion. *See McWhorter*, 290 F.3d at 800 ("[I]n the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment").[4] The Court therefore finds

---

[4] *McWhorter* is distinguishable because there, the magistrate judge issued a report and recommendation to which the plaintiffs objected and then the plaintiffs moved to amend before the district court dismissed the action. *See Mich. Flyer*, 860 F.3d at 432

13

that there is undue delay and dilatory motive in adding an entirely new count for breach of implied contract, which is an alternative theory of liability.

Plaintiffs' other grounds for amending the complaint—to add allegations of fact and "admissions by Defendants" that the associated agreements were never terminated—is also dilatory and would be futile. Plaintiffs seek to introduce emails from Defendants—some of which date from early 2013, ECF 34-8, and others of which date from July 2015 to October 2016, ECF 34-5, 34-6, 34-7—and an activity report dated December 2016, ECF 34-9. Plaintiffs provide no explanation for why they could not have relied upon these emails earlier. Furthermore, Defendants' purported admissions do not support Plaintiffs' claim that Defendants admitted or acknowledged that the agreements remained in force. At best, the communications from Defendants' nonlawyer employees in 2015 and 2016—which use language referring to a "lease"—indicate that there was some form of tenancy. They do not suggest that there was continued performance under the utility services agreement. And the report states that "all boilers have been permanently shutdown for several years." ECF 34-9, PgID 1492. Similarly, although DTE continued to submit reports, "each report notes zero emissions." *Id.* at 1493. Contrary to Plaintiffs' protestations, DTEPN ceased generating utilities well before 2017. Years of nonperformance show that the utility services agreement was terminated. Plaintiffs' proposed evidence and allegations do not undermine the Court's conclusions that the utility services

---

(stating the same and holding that *McWhorter* was distinguishable). Here, Plaintiffs did not indicate that it would seek leave to amend before the Court issued its order.

14

agreement and lease agreement terminated, which were based on the demonstrated nonperformance of the agreements and the terms of the lease agreement itself. The Court therefore will deny Plaintiffs leave to amend on this ground.

But courts are more lenient in allowing plaintiffs to amend their complaints when they fail to allege fraud with particularity. *E.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003); *Brege v. Lakes Shipping Co. Inc.*, 225 F.R.D. 546, 549–550 (E.D. Mich. 2004) (citing *Morse*, 290 F.3d at 799–800); *Empire Title Servs., Inc. v. Fifth Third Mortg. Co.*, 298 F.R.D. 528, 530 (N.D. Ohio 2014) (collecting cases). The Court will therefore grant Plaintiff leave to add allegations to support their veil-piercing theory against DTE Energy.

The Court thus denies in part and grants in part Plaintiffs' motion for leave to amend. Plaintiffs may amend their complaint only to add allegations to support their veil-piercing theory against DTE Energy.[5] The Court does not grant Plaintiffs leave to make any unbriefed changes reflected in their proposed amended complaint.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' motion for reconsideration [29] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for certification for interlocutory appeal [32] is **DENIED**.

---

[5] Defendants argue that amendment on this ground would be futile. But given the liberal standard for amendment to allege fraud, the Court will allow Plaintiffs to amend. Nothing in this order prevents Defendants from moving to dismiss the amended complaint.

15

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend the complaint [34] is **DENIED IN PART AND GRANTED IN PART**. Plaintiff may add allegations to support their veil-piercing theory against DTE Energy no later than **March 26, 2019**.

**IT IS FURTHER ORDERED** that the Court's March 23, 2018 Order is **AMENDED** to reflect March 31, 2011 as the correct filing date of the proof of claim, instead of April 12, 2011.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: February 26, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 26, 2019, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager